*1036 OPINION.
GoodRIch:
The fact that this petitioner in 1923 sustained losses which in the aggregate exceeded her income by the amount of $74,082.60 is not in dispute, but, before she may offset that amount against her income for the year 1924 as a statutory net loss under the provisions of section 206 (f) of the Revenue Act of 1924 and section 204 (a) and (b) of the Bevenue Act of 1921, it must appear clearly that the claimed net loss resulted “ from the operation of any trade *1037 or business regularly carried on by the taxpayer.” Part of the losses sustained by petitioner in 1923 which she claims were in connection with her business resulted from sales of various stocks and the remainder resulted from the transaction with Lenz and was designated upon her return as “ loss on oil investment.”
We are satisfied that in 1923 and prior thereto petitioner was engaged with some regularity in trading in securities. She devoted considerable time to investigation, followed market reports, borrowed money with which to carry on her activities, consummated numerous transactions of purchase and sale, and maintained an office for these purposes. While the evidence discloses that she was the recipient of substantial income of certain trusts established for her benefit, from which we may infer that she did not engage in trading as a means of livelihood, it is not denied that petitioner carried on these activities in the hope of profit, and, under the circumstances of this case, that is sufficient to constitute a trade or business. E. M. Elliott, 15 B. T. A. 494; Ostenberg et al., Admrs., 17 B. T. A. 738; Leigh Carroll, 20 B. T. A. 1029; Glenn M. Averill, 20 B. T. A. 1196; George P. Sacks, 25 B. T. A. 415.
We conclude that the losses sustained in 1923 upon stock sales resulted from the operation of a trade or business regularly carried on by the taxpayer.
- With respect to the loss sustained from the transaction with Lenz, we reach the opposite view. We regard that venture not as one entered into in the course of, or incidental to, petitioner’s business, but as an isolated transaction accurately described upon her return as,.^ “loss, on oil investment.” Petitioner urges that during the years 1919 to 1923, inclusive, she was regularly engaged in (a) business as a trader and promoter, (b) the oil business, or (c) the oil-development business in partnership with Lenz. We have concluded that petitioner was engaged iñ the business of buying and selling securities, but we do not find that her business included trading in leases or other interests in oil lands. In the Lenz transaction she bought, or thought she was buying, an interest in certain leases. There is no evidence here that she purchased her interest with the expectation of selling it within a reasonable time thereafter, and thus derive a profit from trading in the lease interest. On the contrary, the inference is that she made her purchase with the expectation of retaining her interest and subsequently receiving her share of the profits to be derived from the development of the properties under Lenz’s management. As we see it, her intention was to make an investment, not a trade. She was buying to hold, not to sell. Nor had she been trading in oil leases. In 1920 she purchased the Langston lease, the Pugh lease, and an interest in a royalty trust. A part of her interest in the Langston lease she sold later in the same year at a profit, re *1038 taining the balance of her interest until 1922. So far as this record discloses she still owns the Pugh lease, from which she derived income annually up to and including the year here involved, and the interest in the royalty trust. Clearly, her activities in connection with oil leases were isolated and occasional and did not assume a continuity and importance which would characterize them as incidental to a business in which she was regularly engaged. (See Glenn M. Averill, supra.) In other words, the fact that she purchased four oil leases, or interests in them, and sold one, in our opinion, does not adequately support her contention that she was regularly engaged in the business of buying and selling them.
Nor do we find in the facts before us any support for her contention that she was engaged in business as a promoter. Even should we regard her as the promoter of the oil developments planned by Lenz, this one isolated attempt to promote such an enterprise would not warrant our finding that her promoting activities constituted a business regularly carried on. Her dealings in oil properties, or corporations, were not so broad' that it may be said that they constituted her trade or business (see Glenn M. Averill, supra). The distinction between petitioner’s activities in connection with the Lenz proposition, which, she contends, made her a promoter of oil developments, and the activities of those taxpayers who have, been held to be engaged in the business of organizing, developing, financing, or promoting business enterprises, appears so . clearly from the decisions as to make discussion here unnecessary. See Harry F. Harper, 20 B. T. A. 143; E. D. Anthony, 20 B. T. A. 5; T. I. Crane, 17 B. T. A. 720; Edward H. Baker, 17 B. T. A. 733.
We are not impressed with petitioner’s claim that she was in the oil business. She was not engaged in producing, transporting, refining, buying, or selling oil. The fact that she owned leases, or interests therein, embracing oil lands and deceived upon one of them a return of some sort (we presume royalties paid by an operating company) does not put her in the oil business, nor does the fact that, as a trader in securities, she bought and sold stocks (the majority of them listed on the exchange) of various corporations engaged in one or more of the several enterprises included in the “ oil business,” as the term is commonly used. True, as pointed out by counsel upon brief, she devoted considerable time to conferences and examinations of maps and reports, but that was in connection with supplying money to Lenz to be used, according to his statements, in the purchase and development of oil leases.- But, so far as this record shows, she was not in the business, planning or directing the development or the acquisition of territory. She was examining maps and reports and holding conferences in connection with Lenz’s, representations that more money was needed, and she was supplying *1039 more money to assure, if possible, the success of the venture and, consequently, the safety óf her original investment and the realization of her hoped-for profit thereon. Again, the distinction between the situation of this petitioner and that of those taxpayers who have been held to be engaged in various lines of enterprises, because of their control, management, or participation in the activities .of corporations or businesses, is clearly shown by the decisions. See Oscar K. Eysenbach, 10 B. T. A. 716; Washburn v. Commissioner, 51 Fed. (2d) 949, reversing J. L. Washburn, 16 B. T. A. 1091; Elmore L. Potter, 20 B. T. A. 252; Glenn M. Averill, supra; Garnet W. Coen, 18 B. T. A. 1274; Eli Strouse, 24 B. T. A. 748; Charles S. McCain, 25 B. T. A. 364; George P. Sacks, supra.
Finally, petitioner contends that she was in the oil-development business in partnership with Lenz and that the loss of $187,000 arose from the operations of that partnership. Even conceding that petitioner’s agreement with Lenz constituted a contract of partnership, we have no direct proof that the partnership was regularly engaged in the oil-development business. We have before us little more than a recital of the representations made by Lenz upon which he induced petitioner to advance money to him. We may infer that Lenz, or even that the partnership, owned an interest in leases upon oil lands and some drilling equipment, but we have no proof of any development, or attempts at development by Lenz himself or by the partnership, either by contract or through the use of Lenz’s own equipment. No oil had been produced before the end of 1922 — that fact appears— but as to any unsuccessful attempts to develop the lands and produce oil we have no facts. In short, the record as stipulated does not show that either Lenz or the alleged partnership was in any way engaged in the business of developing oil properties and under the circumstances in this case, we are not justified in finding, by inference, that such development was carried on. A fortiori, we can not, by inference, find that the assumed partnership, or petitioner as a member thereof, was regularly engaged in the oil-development business, and that the loss claimed resulted from the operation of that business. Moreover, the loss may have resulted directly from Lenz’s “irregularities,” which were discovered by petitioner in 1923, and as to the nature of which we are not advised.
We conclude that petitioner, either individually or as a member of a partnership, was not regularly engaged in the business of buying and selling, or promoting or developing leases of oil lands, nor in the oil business; that her participation in the transáctions with Lenz was as an investor, not as a trader, and that it was an isolated transaction, not connected with any trade or business regularly carried on by her. Consequently, the loss sustained by her upon her transaction with Lenz is not a net loss within the meaning of the statute.

Judgment will be entered under Bule 50,